| | | |
|---|---|---|
| Albany | **McKenna Long** | New York |
| Atlanta | **& Aldridge**LLP | Philadelphia |
| Brussels | Attorneys at Law | Sacramento |
| Denver | 230 Park Avenue • Suite 1700 • New York, NY 10169 | San Diego |
| Los Angeles | Tel: 212.905.8300 • Fax: 212.922.1819 | San Francisco |
| | www.mckennalong.com | Washington, D.C. |

CHRISTOPHER F. GRAHAM  
(212) 905-8328

EMAIL ADDRESS  
cgraham@mckennalong.com

July 3, 2008

<u>Via Facsimile (212) 805-6326 and (914) 390-4152</u>

The Honorable Colleen McMahon  
United States District Court Judge  
Southern District of New York  
Daniel Patrick Moynihan United States Courthouse  
500 Pearl Street  
New York, New York 10007-1312

      Re:    <u>MM Arizona Holdings LLC v. Nicholas W. Bonanno, Jr. et. al.</u>  
             <u>Case No. 08 Civ. 5353 - CM</u>

Dear Judge McMahon:

      This firm represents the plaintiff MM Arizona Holdings LLC. The defendants, Nicholas Bonanno, Jr. and Rita Bonanno initially retained counsel in this matter no later than June 13, 2008. To my knowledge, at least three law firms have been involved on their behalf since then. Mr. Marderosian's colleague, Mr. Stephen L. Cohen, contacted me last Thursday, June 26, 2008, and advised me that he would probably be representing the defendants. Mr. Bonanno's Arizona counsel agreed to deliver a "settlement statement" to us yesterday relating to a real estate transaction involving the defendants which plaintiff believes to have been fraudulent. Attached hereto as Exhibit A is a letter on behalf of plaintiff to an entity controlled by defendants regarding this transaction. The settlement statement in question is in the possession of the defendants' Arizona attorney who then withdrew that offer to provide a copy deferring to Mr. Cohen. To compromise, earlier today, my partner, Gary Marsh, requested the settlement statement and offered defendants an eleven day extension of time until July 21, 2008 to respond to the Complaint. In the middle of our e-mail dialogue about this document and the extension of time, Mr. Marderosian broke off discussions and elected to write the Court.

      To write "Mr. Graham has not responded..." is disingenuous, particularly given that counsel have exchanged five e-mails this afternoon --- including three sent to me by Mr.

The Honorable Colleen McMahon
July 3, 2008
Page 2


Marderosian. This is a simple case on personal guarantees signed by Mr. Marderosian's clients. The defendants are stalling. The eleven day extension we offered we submit is appropriate and defendants' Nicholas W. Bonanno, Jr. and Rita Bonanno should be required to answer no later than July 21, 2008.

      Finally, I think it was inappropriate for Mr. Marderosian to call Chambers without advising me or my partner Mr. Marsh in advance.

Respectfully submitted,

Christopher F. Graham

Enclosure

cc: Mark D. Marderosian, Esq.

| Albany | **McKenna Long** | New York |
| Atlanta | **& Aldridge**LLP | Philadelphia |
| Brussels | Attorneys at Law | Sacramento |
| Denver | 303 Peachtree Street, NE • Suite 5300 • Atlanta, GA 30308 | San Diego |
| Los Angeles | Tel: 404.527.4000 • Fax: 404.527.4198 | San Francisco |
| | www.mckennalong.com | Washington, D.C. |

CHARLES D. WEISS
(404) 527-8411

EMAIL ADDRESS
cweiss@mckennalong.com

July 3, 2008

**VIA EMAIL AND**
**UPS OVERNIGHT COURIER DELIVERY**
Middle Mountain 156, LLC
c/o Stephen L. Cohen, Esq.
Law Offices of Stephen L. Cohen
99 Park Avenue, Suite 1600
New York, New York 10016

Re: Loan in the stated principal amount of $44,000,000 (the "Loan") from Lehman Brothers Holdings Inc. ("Lehman") to Middle Mountain 156, LLC ("Borrower"), as assigned by Lehman to MM Arizona Holdings LLC ("Lender"), and as evidenced by, among other things, that certain Loan Agreement, dated as of July 13, 2006, between Borrower and Lehman (the "Loan Agreement"; all terms used but not otherwise defined in this letter shall have the meaning set forth in the Loan Agreement) - Right of Way Easement, dated March 14, 2008, from Borrower in favor of Arizona Public Service Company, recorded as Instrument No. 20080435800, Maricopa County, Az. Records - **DEMAND FOR RESCISSION OF EASEMENT**

Gentlemen:

The above referenced Loan has been assigned by Lehman to the Lender. We represent Lehman and the Lender with respects to matters pertaining to the Loan.

The Loan matured in accordance with its terms. The Borrower failed to pay the Loan in full on the Initial Maturity Date. Such nonpayment constitutes an Event of Default under the Loan Documents. In addition, certain other Events of Default have occurred and are existent. The Loan remains in default and is presently due and payable in full.

The Borrower's Property located in Maricopa County is collateral for the Loan and is encumbered by the Security Instrument recorded in Maricopa County and by certain of the other Loan Documents. The Loan Documents, including, without limitation, the Security Instrument and the Loan Agreement, expressly prohibit the transfer and conveyance of any legal or beneficial interest in the Property without the prior written consent of the Lender. Furthermore,

Middle Mountain 156, LLC
July 3, 2008

the Loan Documents grant to the Lender a first in lien priority security interest in all proceeds of the disposition of any of the Property or any interests therein.

In connection with this firm's review on July 1, 2008, of a Trustee Sale Guarantee related to the Property, the Lender became aware of the recordation of that certain Right of Way Easement, dated as of March 14, 2008, executed by the Borrower in favor of the Arizona Public Services Company, an Arizona corporation ("APS"), and filed for record on May 16, 2008, as Instrument No. 200804435800 in the Maricopa County, Arizona Records (the "Easement"). A copy of the Easement was obtained on July 1, 2008. A one page Consent and Ratification, dated May 2, 2008, purported to have been executed by an Authorized Signatory of Lehman, was recorded with the Easement.

Lawyers Title of Arizona, Inc.("LTA"), confirmed on July 1, 2008, that an escrow had been established with LTA pursuant to which it held the executed Easement deposited by the Borrower and funds deposited by APS in the amount of approximately $1,800,000 (the "Easement Consideration"), that the escrow was LTA Escrow Number 01645871 (the "Escrow"), that Mr. Nicholas W. Bonanno, Jr., or an affiliated person caused the Consent to be delivered to LTA, that LTA made no effort to verify from LBHI or its counsel the validity of the Consent, and that LTA closed the escrow on May 9, 2008, disbursed the Easement Consideration pursuant to direction of the Borrower on or about that date, and caused the Easement (with the Consent attached thereto) to be recorded on May 16, 2008. The grant of the Easement by the Borrower to APS and the payment by APS of the Easement Consideration to Borrower are collectively referred to as the "Easement Transaction".

I advised Steven Bienstock, Esq., in a phone call on July 1, 2008, that neither we, nor our clients, were aware that the Easement had been delivered and recorded, or that Lehman had executed the Consent or had delivered the Consent to the Borrower, LTA, or any other Person. Mr. Bienstock advised me in that same call that he was previously not aware that the Escrow had been closed, that the Easement had been recorded, or that the Easement Consideration had been disbursed by LTA.

I have confirmed with Lehman that the Authorized Signatory whose purported signature is on the Consent, in fact, did not execute the Consent, that she did not authorize any Person to sign her name on the Consent, that she did not deliver or authorize any Person to deliver a signed Consent to Mr. Nicholas W. Bonanno, to any other Borrower affiliate, to LTA, or to any other Person, and that such Authorized Signatory never received any communication from any Person acting on behalf of LTA inquiring as to whether she in fact executed the Consent, whether she delivered the Consent to Mr. Bonanno or to any other representative of the Borrower, or whether Lehman had any conditions precedent to the delivery, recordation, or effectiveness of the Consent.

The Borrower, therefore, is hereby advised that the Consent was not executed by the indicated Authorized Signatory, that the signature on the Consent is a forgery, and that the Consent is null and void, is of no binding effect on Lehman or Lender, and is not enforceable against Lehman, the Lender, or any successor owner and holder of the Loan. Neither Lehman,

Middle Mountain 156, LLC
July 3, 2008

nor Lender, has (a) consented to the Borrower's execution, delivery, recordation, or performance of the Easement, or (b) agreed that the amount of the Easement Consideration is sufficient or adequate or equals the fair market value of the Easement, or (c) has agreed that the Security Instrument or any of the other Loan Documents is subordinate or inferior, in any respect, to the Easement or to any rights of APS thereunder. Consequently, under applicable law, the Easement is subordinate and inferior in all respects to the Security Instrument and the other applicable Loan Documents. Upon foreclosure of the Security Instrument, the Easement and all rights, title, and interests of APS thereunder shall be extinguished automatically by operation of law.

This letter is intended to constitute a demand by Lender that the Borrower and the Guarantors immediately do or cause to be done the following acts no later than 5:00 p.m. (Phoenix time) on Thursday, July 10, 2008 (the "Rescission Deadline"):

1. Cause APS to execute, deliver, and record a quitclaim deed in favor of the Borrower for the express purpose of waiving, releasing, conveying, and assigning to the Borrower all right, title, and interest of APS in, to, and under the Easement, and agreeing that the Easement is null and void ab initio (the "Quitclaim Deed") and to deliver to the undersigned a true, correct, and complete copy of the Quitclaim Deed with evidence of recordation of the original thereof in the Maricopa County Records; and

2. Cause the entire amount of the Easement Consideration to be repaid to APS and to thereby effectuate a rescission of the Easement Transaction, and to deliver to the undersigned written confirmation from an appropriate officer of APS that the entire amount of the Easement Consideration has been so repaid in full by the Borrower to APS.

If APS should refuse to execute, deliver, and record the Quitclaim Deed no later than the Rescission Deadline, the Borrower must cause the entire amount of the Easement Consideration to be delivered by federal wire transfer of funds to the Lender on Friday, July 11, 2008. Please contact the undersigned, or my colleague, Gerald D. Walling, Esq. (gwalling@mckennalong.com & Ph. 404/527-8564) for specific wire instructions at such time as you are able to wire funds. In such event, the Lender will hold the Easement Consideration as additional collateral for the Loan, subject to the rights and remedies of the Lender with respect to such collateral under the Loan Documents, at law, and in equity.

If the actions described in paragraphs 1 and 2, above, are not effectuated within the time period specified above, be advised that Lender may exercise any and all rights and remedies to which it may be entitled against the Borrower, the Guarantors, and/or APS, as appropriate, for the Borrower's execution and delivery of the Easement and APS' acceptance of the Easement in contravention of the terms of the Loan Documents, the delivery of the forged Consent by a Person acting on behalf of the Borrower, and, if the Borrower and APS fail to effectuate a rescission of the Easement Transaction and Borrower fails to turn over to Lender the Easement Consideration in compliance with the immediately preceding paragraph, the failure of the Borrower to deliver the Easement Consideration to the Lender and the failure of APS to pay fair market value for the Easement.

ATLANTA:5029294.4

Middle Mountain 156, LLC
July 3, 2008

    Nothing contained in this letter is intended or shall be deemed to constitute a cure of the existing Events of Default under the Loan Documents, a reinstatement of the maturity of the Loan or a waiver, release, relinquishment, or agreement to forbear from the exercise of, any of the Lender's rights and remedies under the Loan Documents and applicable law, all of said rights and remedies being hereby expressly reserved. By way of illustration only, and not by way of limitation, the receipt and holding of the Easement Consideration by Lender shall under no circumstance be construed as any consent to or approval by Lender of the Easement. Lender has not consented, and does not consent, to the Easement. Lender has a security interest in proceeds of the Property, the Easement Consideration constitutes proceeds of a part of the Property, the Lender is a secured party with respect to the such proceeds and is entitled to possession of such proceeds under the terms of the Loan documents and applicable law. The Lender seeks to avoid dissipation of such Easement Consideration and to preserve and protect the Easement Consideration in order to facilitate a rescission or avoidance of the Easement and a restoration of the Borrower and APS to their respective positions prior to the Borrower's grant of the Easement in order to minimize the adverse consequences to all parties concerned as a result of the delivery of the forged Consent to LTA.

    **DEMAND IS HEREBY MADE THAT THE BORROWER AND THE GUARANTORS GOVERN THEIR ACTIONS ACCORDINGLY.**

Sincerely,

*[signature]*

Charles D. Weiss

cc:    Mr. Nicholas W. Bonanno, Jr.
        Mrs. Rita Bonanno
        Mr. Allen D. Jenkins
        Mr. Allen D. Jenkins, as executor and
           representative of the Estate of
           Tamera R. Jenkins
        Mr. Wayne Darby (c/o Robert J. Moon, Esq.)
        Robert J. Moon, Esq.
        Dianne Flaaen, Esq.
        Steven Bienstock, Esq.