UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

| | |
|---|---|
| MM Arizona Holdings LLC, | : Case No.: 08 Civ. 5353 |
| | : (Hon. Colleen McMahon, D.J.) |
| Plaintiff, | : (Hon. Andrew J. Peck, M.J.) |
| | : |
| -against- | : FIRST AMENDED ANSWER and |
| | : COUNTERCLAIMS of the |
| Nicholas W. Bonanno, Jr., Rita Bonanno, Allen | : BONANNO DEFENDANTS and |
| D. Jenkins, individually, and Allen D. Jenkins both | : the JENKINS DEFENDANTS |
| Individually and as a personal representative of | : |
| the estate of Tamera R. Jenkins, | : |
| | : |
| Defendants, | : |
| | : |
| -against- | : |
| | : |
| Lehman Brothers Holdings Inc. d/b/a Lehman | : Jury trial: |
| Capital and Investors Mortgage Holdings, Inc., | : |
| | : These defendants-counterclaimants |
| Additional Counterclaim Defendants. | : request a jury trial. |

-------------------------------------------------------------x

Defendants Nicholas W. Bonanno, Jr. and Rita Bonanno (collectively, the "Bonannos") together with defendant Allen D. Jenkins ("Jenkins") as their First Amended Answer to the Complaint in this matter Complaint dated June 11, 2008 (the "Complaint") assert the allegations contained in the numbered paragraphs set forth below.  The Bonannos and Jenkins, acting both individually and in his capacity as representative of his deceased wife's estate, respectfully submit this pleading jointly in order to avoid unnecessary duplication in the court's docket.  This joint submission is not, nor should any party or the court misconstrue it to constitute, an admission that the Bonannos and Jenkins are united-in-interest, have acted and/or are acting jointly in any respect material to this dispute and/or its adjudication:

1

1. The Bonannos herewith incorporate by reference, re-assert and re-allege, the responses contained in their initial Answer dated August 7, 2008 as they relate to the numbered allegations contained in the Complaint.

2. Jenkins herewith incorporates by reference, re-asserts and re-alleges, the responses contained in his initial Answer dated August 7, 2008 as they relate to the numbered allegations contained in the Complaint.

## FIRST AFFIRMATIVE DEFENSE

3. The document identified in the Complaint as the Guarantor Full Payment Guaranty dated July 13, 2006 (the "Guaranty") is void and unenforceable against the Bonannos and Jenkins, because additional counterclaim defendants Lehman Brothers Holdings Inc. d/b/a Lehman ("Lehman Brothers") and Investors Mortgage Holdings, Inc. ("IMH") fraudulently induced:

   a. the Bonannos and Jenkins to execute that document; and

   b. non-party Middle Mountain 156 LLC ("Middle Mountain") to execute the associated Loan Agreement dated July 13, 2006 ("Loan Agreement").

4. The fraud committed by Lehman Brothers and/or its agent renders the Loan Agreement and Guaranty void or voidable under governing law.

## SECOND AFFIRMATIVE DEFENSE

5. Assuming the Guaranty and Loan Agreement constitute enforceable contracts under governing law, Lehman Brothers breached the Loan Agreement before any default allegedly committed by Middle Mountain when, acting directly and/or through its agent IMH, Lehman Brothers committed the following, among other, culpable acts:

2

    a. diverted and/or otherwise refused to release funds necessary to procure water and sewer services ("Water and Sewer Services"), which Lehman Brothers knew were absolutely indispensable to the contemplated development of the underlying real property parcels located in Maricopa County, Arizona (the "Property");

    b. deliberately miscalculated interest allegedly due under the Loan Agreement and the reserves necessary to fund its payment;

    c. deliberately failed to provide an accounting of the reserves and disbursements related thereto;

    d. deliberately undermined Middle Mountain's good faith efforts to bring Water and Sewer Services to the Property by intervening in a condemnation action brought by the Arizona Department of Transportation ("ADOT"), while refusing to participate in the associated mediation process and thereby assuming a position adverse to Middle Mountain; and

    e. deliberately undermined the mediated resolution reached between Middle Mountain and ADOT by moving to terminate the over-arching condemnation proceeding against Middle Mountain's wishes, simply so Lehman Brothers could collect funds generated by the condemnation, which further compromised Middle Mountain's good faith efforts to bring Water and Sewer Services to the Property.

6. Whether viewed together or separately, these actions and omissions constitute breaches of the Loan Agreement and/or the covenant of good faith and fair dealing implied therein by governing law. These breaches precipitated and/or otherwise excuse any default alleged by Arizona Holdings in the Complaint.

## THIRD AFFIRMATIVE DEFENSE

7. The equitable doctrines of unclean hands and/or *in pari delicto* prohibit assertion of the claims alleged in the Complaint.

## FOURTH AFFIRMATIVE DEFENSE

8. The plaintiff named in this action, MM Arizona Holdings LLC ("Arizona Holdings"), is a limited liability company formed under Delaware law, which is not registered to conduct business in this jurisdiction. New York Business Corporation Law § 1312(a) states in pertinent part:

> A foreign corporation doing business in this state without authority shall not maintain any action or special proceeding in this state unless and until such corporation has been authorized to do business in this state and it has paid to the state all fees and taxes imposed under the tax law or any related statute . . . as well as penalties and interest charges related thereto, accrued against the corporation.

9. In paragraph 1 of the Complaint, Arizona Holdings describes itself as "a Delaware limited liability company with its principal place of business being New York, New York." This constitutes an admission that Arizona Holdings is "doing business in this state" as contemplated in Section 1312(a), which in turn requires plaintiff to become "authorized" within the meaning of the statute before it may maintain this action.

## FIFTH AFFIRMATIVE DEFENSE

10. The document identified in the Complaint as the Forbearance Agreement dated April 16, 2008 (the "Forbearance Agreement") is void and unenforceable, because Lehman Brothers and/or IMH fraudulently induced the Bonannos and Jenkins to execute that document.

11. The fraud committed by Lehman Brothers and/or its agent renders the Forbearance Agreement void or voidable under governing law.

4

SIXTH AFFIRMATIVE DEFENSE

12. Assuming the Loan Agreement constitutes an enforceable contract under governing law, Lehman Brothers precipitated any default allegedly committed by Middle Mountain when it breached that contract in the manners described above and thereby rendered Middle Mountain's performance impossible and/or otherwise interfered therewith.

13. Lehman Brothers acted deliberately to undermine and/or deliberately omitted to act in a manner conducive to the reciprocal performance (repayment) it alleges Middle Mountain owed under the Loan Agreement.

14. Upon information and belief, Lehman Brothers committed the above-mentioned actions and/or omissions in order to induce a default by Middle Mountain, so that Lehman Brothers could acquire title to the Property through foreclosure.

15. Under the circumstances, equitable principles (as contemplated in the Forbearance Agreement itself) prohibit enforcement of any alleged re-affirmation by the Bonannos and Jenkins of the "validity and legally binding nature" of the Loan Agreement and/or Guaranty.

SEVENTH AFFIRMATIVE DEFENSE

16. Venue is improper in this court and should be changed to the United States District Court for the District of Arizona, which is located in Phoenix, Maricopa County (the "Arizona Federal District Court").

17. The Bonannos and Jenkins reside in Maricopa County, Arizona.

18. Additional counterclaim defendant IMH maintains its principal business offices in Maricopa County, Arizona.

19. Upon information and belief, the IMH employees who participated most actively in the negotiation and execution of the Loan Agreement and Guaranty (i.e., its president, Shane

C. Albers, and its Senior Vice President for Lending, Ann M. McCartney f/k/a Ann M. Covill) reside in Maricopa County, Arizona.

20. Upon information and belief, the IMH employees who participated most actively in post-execution conduct pertaining to the Loan Agreement reside in Maricopa County, Arizona.

21. The Bonannos and Jenkins, as counterclaimants, contend that Lehman Brothers, whether acting directly and/or through its agent IMH, induced Middle Mountain to enter into the Loan Agreement through fraud.

22. The Bonannos and Jenkins, as counterclaimants, contend that Lehman Brothers, whether acting directly and/or through its agent IMH, induced them to enter into the Guaranty through fraud.

23. Lehman Brothers committed that fraud, whether acting directly and/or through its agent IMH, through acts and/or omissions committed in Arizona where the Loan Agreement and Guaranty were negotiated and executed.

24. The subject of the Loan Agreement and Guaranty is a real estate development project located in Maricopa County, Arizona.

25. All real property subject to development as contemplated in the Loan Agreement and Guaranty is situated in Maricopa County, Arizona. All such property falls within the jurisdiction of the United States District Court for the District of Arizona.

26. All real property pledged as security against any enforceable repayment obligation embodied in the Loan Agreement and/or Guaranty is situated in Maricopa County, Arizona and/or Pinal County, Arizona. All such property falls within the jurisdiction of the Arizona Federal District Court.

27. With a few exceptions, every other person who participated in the negotiation and/or execution of the Loan Agreement and Guaranty resides in Arizona. All such persons are subject to the subpoena authority of the Arizona Federal District Court.

28. With a few exceptions, original versions of all documentary evidence pertinent to the negotiation and/or execution of the Loan Agreement and Guaranty are situated in Arizona. All such documents are subject to the subpoena authority of the Arizona Federal District Court.

29. With a few exceptions, every other person who participated in the performance and/or contemplated performance of the Loan Agreement resides in Arizona. All such persons are subject to the subpoena authority of the Arizona Federal District Court.

30. With a few exceptions, original versions of all documentary evidence pertinent to the post-execution conduct pertaining to the Loan Agreement are situated in Arizona. All such documents are subject to the subpoena authority of the Arizona Federal District Court.

31. Lehman Brothers, whether acting directly and/or through its agents, has commenced foreclosure proceedings in the Arizona courts in order to acquire title to the real property parcels pledged as security against any enforceable repayment obligation embodied in the Loan Agreement and/or Guaranty (the "Arizona Foreclosure Actions").

32. The outcome of the Arizona Foreclosure Actions will depend on a determination of the claims and counterclaims asserted in this action, which share many common legal and factual questions (e.g., whether the Loan Agreement and/or Guaranty embody enforceable obligations; whether Lehman Brothers fraudulently induced the Bonannos and Jenkins to execute those documents; whether Lehman Brothers breached the Loan Agreement, assuming it constitutes an enforceable contract, thereby excusing any alleged default by Middle Mountain).

33. Under the circumstances, the Arizona Federal District Court located in Maricopa County, Arizona is the best and most appropriate venue to ensure a just and thorough adjudication of the claims and counterclaims asserted by the parties.

34. Changing venue and transferring this matter to the Arizona Federal District Court located in Maricopa County, Arizona will visit no prejudice whatsoever on the plaintiff, Arizona Holdings, and/or on additional counterclaim defendant Lehman Brothers.

### EIGHTH AFFIRMATIVE DEFENSE

35. Lehman Brothers, acting directly and/or through its agent IMH, exercised or sought to exercise such dominion and/or effective control over the real estate development project underlying the Loan Agreement that it became a partner and/or co-venturer therein. Under the circumstances, the funds Lehman Brothers purported to disburse as loan proceeds under the Loan Agreement should be viewed as the capital contributions of a partner and/or co-venturer in the underlying the real estate development project.

### ALLEGATIONS COMMON TO ALL COUNTERCLAIMS

36. Non-party Middle Mountain is a limited liability company formed under Arizona, which maintains its principal business offices in Glendale, Arizona.

37. The plaintiff, Arizona Holdings, declined to name Middle Mountain as a party to this action although it identified that entity as "borrower" under the Loan Agreement to which the Guaranty at issue here relates. Middle Mountain should be joined in this action pursuant to FRCP 19(a) in order to ensure a just and thorough adjudication of the claims plaintiff asserts in its Complaint and those counterclaims the Bonannos and Jenkins assert in this Answer.

38. Additional counterclaim defendant Lehman Brothers is a corporation formed under Delaware law, which maintains its principal business offices in New York, New York.

8

39. The plaintiff, Arizona Holdings, is a limited liability company formed under Delaware law, which maintains its principal business offices in New York, New York.

40. Upon information and belief, Lehman Brothers formed and controls Arizona Holdings as a wholly-owned subsidiary.

41. Upon information and belief, Lehman Brothers formed Arizona Holdings as a single purpose entity solely to assume its alleged rights under the Loan Agreement and Guaranty.

42. Upon information and belief, additional counterclaim-defendant IMH is a corporation formed under Arizona law, which maintains its principal business offices in Maricopa County, Arizona.

43. The Loan Agreement and Guaranty, which underlie this action and animate every claim, emanate from a real estate development venture under taken by defendants-counterclaimants Nicholas W. Bonanno and Allen D. Jenkins in Maricopa County, Arizona.

44. Bonanno and Jenkins, acting through Middle Mountain, invested approximately $6 million in personal funds and borrowed approximately $35.5 million (from non-party lenders other than Lehman Brothers) in order to acquire and assemble the various real property parcels constituting the Property.

45. The various real property parcels constituting the Property are described in Exhibit A-1 to the Loan Agreement, which in turn is annexed as Exhibit A to the Complaint.

46. Bonanno and Jenkins, acting through Middle Mountain, acquired and assembled the Property contemplating that they would undertake to develop, partition, and then re-sell the underlying parcels as residential and commercial sites at a substantial net profit.

47. Bonanno has substantial experience in such developments, which (in addition to the myriad legal, financial, environmental, and political considerations that accompany any

9

large-scale real estate development venture) entail complex logistical and regulatory complications unique to America's desert southwest.

48.     Principal among those considerations are water resources (i.e., the ability to secure and deliver potable water to the real property under development) and sewage management (i.e. the ability to collect, remove, and treat sewage and other waste-water).

49.     Bonanno and Jenkins determined to re-finance the development loan package they had assembled with a group composed of the non-party lenders mentioned above.

50.     In order to help facilitate that re-financing, their non-party lenders introduced Bonanno and Jenkins to IMH, which represented to them that it had a loan originating relationship with Lehman Brothers.

51.     IMH acted as agent to Lehman Brothers at all relevant times.

52.     At all relevant times, the various real property parcels constituting the Property were "raw land" and lacked infrastructure to provide: (a) potable water and/or sewage management services (previously defined as "Water and Sewer Services"); (b) transportation by paved roads; (c) consumer-ready electricity; (d) consumer-ready natural gas; (e) consumer-ready telecommunications services; and/or (f) other utilities and services necessary to any residential and/or commercial development contemplated by Bonanno and Jenkins.

53.     Lehman Brothers and IMH knew these facts and conducted their own independent evaluation of the Property and its proposed development plan.

54.     Water and Sewer Services necessary to that development plan could be obtained only from a location situated northeast of the Property.

55.     This fact required Middle Mountain to construct dedicated water and sewer lines running one-half mile north of the Property to a road ("Boundary Road") and then to construct a

10

utility sleeve running beneath the adjacent interstate highway (the "Interstate"), which in turn would connect their dedicated water and sewer lines to pre-existing water transmission and sewage interceptor facilities located on the other side of the Interstate.

56. The legal permitting and construction processes attendant such a development-related undertaking are complex and expensive.

57. Taking into consideration these additional complexities and expenses, Middle Mountain sought a $37.2 million loan from Lehman Brothers to buy-out the existing development-related loan package (arranged through the non-party lenders mentioned above), which Middle Mountain proposed would be secured exclusively by the Property itself.

58. After reviewing the proposed development plan and appraisals of the underlying Property, Lehman Brothers, acting directly and/or through its agent IMH, concluded that the Property in its unimproved state was inadequate to secure such a loan.

59. In the alternative, Lehman Brothers proposed a $44 million loan, including various multi-million dollar reserves set aside specifically to finance the permitting and construction processes necessary to install indispensable Water and Sewer Services.

60. In addition, Lehman Brothers demanded the Bonannos and Jenkins execute the Guaranty and pledge as additional security approximately 80 acres situated elsewhere in Arizona with an appraised value exceeding $4.7 million.

61. Lehman Brothers ultimately disbursed loan proceeds adequate to take-out the non-party lenders mentioned above.

62. Despite repeated demands by Middle Mountain, however, Lehman Brothers, acting directly and/or through its agent IMH, refused to release the multi-million dollar reserve it

had agreed would be set aside to finance the permitting and construction processes necessary to install the Water and Sewer Services.

63. This deliberate refusal to disburse reserve funds undermined Middle Mountain's efforts to procure the Water and Sewer Services.

64. As alleged more thoroughly elsewhere in this Answer, Lehman Brothers, acting directly and/or through its agent IMH, committed other actions and omissions designed to undermine Middle Mountain's plan to develop the Property with a design to cause its default under the Loan Agreement.

FIRST COUNTERCLAIM

65. The Bonannos and Jenkins herewith incorporate by reference the allegations set forth above in paragraphs 1 through 64, inclusive.

66. Upon information and belief, Lehman Brothers entered into the Loan Agreement and Guaranty, while harboring an undisclosed, but then-present, intention to dishonor its promises in a manner designed to precipitate a default by Middle Mountain in order to acquire the Property through foreclosure.

67. Lehman Brothers, acting directly and/or through its agent IMH, deliberately deprived Middle Mountain of the funds necessary to finance the permitting and construction processes necessary to install the Water and Sewer Services.

68. Without those funds, which Lehman Brothers had explicitly agreed to set aside as a dedicated reserve, Middle Mountain was unable to procure the Water and Sewer Services in keeping with its property development schedule.

69. In addition to the foregoing, Lehman Brothers, acting directly and/or through its agent IMH, deliberately undermined Middle Mountain's good faith efforts to bring Water and

12

Sewer Services to the Property by intervening in a condemnation action brought by ADOT, while refusing to participate in the associated mediation process and thereby assuming a position adverse to Middle Mountain.

70. In addition to the foregoing, Lehman Brothers, acting directly and/or through its agent IMH, deliberately undermined the mediated resolution reached between Middle Mountain and ADOT by moving to terminate the over-arching condemnation proceeding against Middle Mountain's wishes, simply so Lehman Brothers could collect funds generated by the condemnation, which further compromised Middle Mountain's good faith efforts to bring Water and Sewer Services to the Property.

71. The resulting delay in development of the Property rendered Middle Mountain unable to generate the re-sale income necessary to meet its repayment obligations in a timely fashion under the Loan Agreement.

72. Upon information and belief, Lehman Brothers committed the above-mentioned actions and/or omissions in order to induce a delay-related default by Middle Mountain, so that Lehman Brothers could acquire title to the Property through foreclosure.

73. Upon information and belief, Lehman Brothers negotiated and executed the Loan Agreement with a then-present intention to commit the above-mentioned actions and/or omissions, whose purpose was to precipitate a default by Middle Mountain.

74. Lehman Brothers procured the Loan Agreement through fraudulent inducement, which renders that agreement void or voidable under governing law.

75. In the alternative, the Bonannos and Jenkins demand a money judgment against Lehman Brothers and IMH, jointly and severally, in an amount equal to the profit Middle Mountain anticipated receiving upon achieving a successful development of the Property.

SECOND COUNTERCLAIM

76.     The Bonannos and Jenkins herewith incorporate by reference the allegations set forth above in paragraphs 1 through 75, inclusive.

77.     Assuming the Guaranty and Loan Agreement constitute enforceable contracts under governing law, Lehman Brothers breached the Loan Agreement before any default allegedly committed by Middle Mountain when, acting directly and/or through its agent IMH, Lehman Brothers:

> a.  diverted and/or otherwise refused to release funds necessary to procure the Water and Sewer Services, which Lehman Brothers knew were absolutely indispensable to the contemplated development of the Property;
>
> b.  deliberately miscalculated interest allegedly due under the Loan Agreement and the reserves necessary to fund its payment;
>
> c.  deliberately failed to provide an accounting of the reserves and disbursements related thereto;
>
> d.  deliberately undermined Middle Mountain's good faith efforts to bring Water and Sewer Services to the Property by intervening in a condemnation action brought by ADOT, while refusing to participate in the associated mediation process and thereby assuming a position adverse to Middle Mountain; and
>
> e.  deliberately undermined the mediated resolution reached between Middle Mountain and ADOT by moving to terminate the over-arching condemnation proceeding against Middle Mountain's wishes, simply so Lehman Brothers could collect funds generated by the condemnation, which further compromised Middle Mountain's good faith efforts to bring Water and Sewer Services to the Property.

78. Whether viewed together or separately, these actions and omissions constitute breaches of the Loan Agreement and/or the covenant of good faith and fair dealing implied therein by governing law. These breaches precipitated and/or otherwise excuse any default alleged by Arizona Holdings in the Complaint.

79. In the alternative, the Bonannos and Jenkins demand a money judgment against Lehman Brothers and IMH, jointly and severally, in an amount equal to the profit Middle Mountain anticipated receiving upon achieving a successful development of the Property.

### THIRD COUNTERCLAIM

80. The Bonannos and Jenkins herewith incorporate by reference the allegations set forth above in paragraphs 1 through 79, inclusive.

81. The actions and omissions in which Lehman Brothers engaged, directly and/or through its agent IMH, in connection with condemnation and mediation proceedings involving ADOT constituted a knowing and deliberate interference in prospective business relations and/or economic advantage.

82. The Bonannos and Jenkins demand a money judgment against Lehman Brothers and IMH, jointly and severally, in an amount equal to the profit Middle Mountain anticipated receiving upon achieving a successful development of the Property.

### FOURTH COUNTERCLAIM

83. The Bonannos and Jenkins herewith incorporate by reference the allegations set forth above in paragraphs 1 through 82, inclusive.

84. IMH conspired in and/or otherwise provided Lehman Brothers knowing and substantial assistance in committing the actions and/or omissions constituting the fraud and contractual breaches alleged above.

85.     IMH thereby aiding and abetted Lehman Brothers in committing the culpable conduct alleged.

86.     The Bonannos and Jenkins demand a money judgment against IMH in an amount equal to the profit Middle Mountain anticipated receiving upon achieving a successful development of the Property.

WHEREFORE defendants Nicholas W. Bonanno, Jr. and Rita Bonanno, together with defendant Allen D. Jenkins, respectfully request that the court issue judgment as follows:

a)  An Order dismissing the Complaint in its entirety as against them based on the Affirmation Defenses set forth above;

b)  An Order transferring this matter to the United States District Court for the District of Arizona based on the Seventh Affirmative Defense set forth above;

c)  On the First Counterclaim, an order declaring the Loan Agreement and Guaranty void or voidable;

d)  In the alternative on the First Counterclaim, a money judgment against Lehman Brothers and IMH, jointly and severally, in an amount equal to the profit Middle Mountain anticipated receiving upon achieving a successful development of the Property;

e)  On the Second Counterclaim, a money judgment against Lehman Brothers and IMH, jointly and severally, in an amount equal to the profit Middle Mountain anticipated receiving upon achieving a successful development of the Property;

f)  On the Third Counterclaim, a money judgment against Lehman Brothers and IMH, jointly and severally, in an amount equal to the profit Middle Mountain anticipated receiving upon achieving a successful development of the Property;

g) On the Fourth Counterclaim, a money judgment against IMH in an amount equal to the profit Middle Mountain anticipated receiving upon achieving a successful development of the Property; and

h) Any additional and/or other relief the court deems appropriate.

Dated: New York, New York
August 27, 2008

Respectfully submitted jointly by:

Law Offices of Stephen L. Cohen
Counsel to defendants-counterclaimants Nicholas W. Bonanno, Jr. and Rita Bonanno

By: *Mark D. Marderosian* (facsimile signature)
Mark D. Marderosian (MDM-8116)

99 Park Avenue, Suite 1600
New York, New York 10016
(212) 277-5862 / telephone
(212) 490-4413 / facsimile
e-mail: mark.marderosian@gmail.com

32 Main Street
Chatham, New York 12037
(518) 392-3131 / telephone

Law Offices of Maurice Sieradzki (MS-5974)
Counsel to defendant-counterclaimant Allen D. Jenkins
225 Broadway, Suite 2510
New York, New York 10007
(212) 791-3159 / telephone
(212) 406-3548 / facsimile
e-mail: mauratlaw@verizon.net

VERIFICATION

STATE OF ARIZONA        }
                        }
COUNTY OF MARICOPA      }

      NICHOLAS W. BONANNO, having been duly sworn before a Notary Public authorized to administer oaths in this jurisdiction, herewith deposes and states that:

      1.      I am a defendant-counterclaimant named in this action. I have read the attached Amended Answer dated August 27, 2008 and verify the accuracy of the allegations contained therein based on my personal knowledge of the underlying facts.

      2.      I further verify that any allegations made in the Amended Answer "upon information and belief" are accurate to the best of my knowledge.


                                                                            By:    _____
                                                                                     NICHOLAS W. BONANNO

Executed before me this
_____ day of August 2008


_____
Notary Public